OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



August 2, 2001

Mr. Robert J. Huston
Chair, Texas Natural Resource
  Conservation Commission
P.O. Box 13087
Austin, Texas 78711-3087

Opinion No. JC-0402

Re: Whether section 26.179 of the Water Code as amended in 1999 is constitutional (RQ-0363-JC)

Dear Mr. Huston:

In *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868 (Tex. 2000), the Texas Supreme Court held that section 26.179 of the Texas Water Code, as it was enacted in 1995, violated article III, section 1 of the Texas Constitution because it impermissibly delegated legislative authority to private landowners. *See FM Props.*, 22 S.W.3d 868. The court expressly noted, however, that the Texas Legislature had amended the statute in 1999, *see id.* at 870 n.1, and that those amendments did not apply to that case, *see id.*; *see also id.* at 901 (Justice Abbott dissenting) ("The Court appropriately has *not* said that the amended act is unconstitutional."). Because your agency is charged with administering certain provisions of the statute, you ask about the constitutionality of section 26.179 in light of the 1999 amendments.[1] We conclude that the 1999 amendments to section 26.179 do not affect the Texas Supreme Court's conclusion that the statute is unconstitutional.

Before discussing the 1999 amendments to section 26.179 and their significance, we briefly review the key provisions of the statute and the Texas Supreme Court's opinion in *FM Properties*. For purposes of this review, we cite to the 1995 version of section 26.179 as construed by the court.

As a general matter, section 26.177 of the Water Code authorizes cities to establish water pollution control and abatement programs that include areas within their extraterritorial jurisdictions (ETJs). *See* TEX. WATER CODE ANN. § 26.177 (Vernon 2000). Section 26.179 creates an exception to that grant of authority, permitting landowners of contiguous tracts of at least 500 acres within certain municipalities' ETJs to designate their property as "water quality protection zones." *See* Act of May 24, 1995, 74th Leg., R.S., ch. 975, § 1, sec. 26.179(c), (d), 1995 Tex. Gen. Laws 4863, 4864. The statute exempts the landowners from a variety of otherwise applicable regulations, including water quality regulations, and allows the landowners to create and implement a water quality plan for the zone. Landowners designate a zone by filing a water quality plan and a general description

---

[1] Letter from Mr. Robert J. Huston, Chair, Texas Natural Resource Conservation Commission, to Honorable John Cornyn, Texas Attorney General (Mar. 5, 2001) (on file with Opinion Committee).

of water quality protection facilities and proposed land uses for the zone in the applicable county deed records. *See id.* § 1, sec. 26.179(e), (f). Landowners owning 500 to 1,000 contiguous acres must secure approval of their water quality protection zones from the Texas Natural Resource Conservation Commission (TNRCC) before designating a zone. *See id.* § 1, sec. 26.179(d). Landowners owning 1,000 acres or more may designate a zone without preapproval from the TNRCC. *See id.* These zones and their corresponding water quality plans are effective immediately upon recordation in the county deed records. *See id.* § 1, sec. 26.179(f), (g). A zone's water quality plan is a covenant running with the land. *See id.* § 1, sec. 26.179(h), 1995 Tex. Gen. Laws 4863, 4865.

Under the statute, landowners may choose between two general objectives in formulating their water quality plans: (1) to maintain background levels of water quality in waterways; or (2) to capture and retain the first 1.5 inches of rainfall from developed areas. *See id.* § 1, sec. 26.179(a), 1995 Tex. Gen. Laws 4863. For each zone, a registered professional engineer must certify that the water quality plan is designed to achieve one of these objectives. *See id.* § 1, sec. 26.179(g), 1995 Tex. Gen. Laws 4863, 4864.

The TNRCC reviews water quality plans, but must approve a plan unless it finds that implementing the plan will not reasonably attain one of the two water quality objectives. *See id.* Zones are presumed to satisfy all other state and local requirements for water quality protection, but development in the zone must comply with all state laws and commission rules regulating water quality in effect on the date the landowner designates the zone. *See id.* § 1, sec. 26.179(k), 1995 Tex. Gen. Laws 4863, 4865. In addition, the TNRCC may require and enforce water quality protection measures to comply with mandatory federal water quality requirements. *See id.* § 1, sec. 26.179(m), 1995 Tex. Gen. Laws 4863, 4866.

In reviewing a water quality plan, the TNRCC may not require public hearings and must complete its review and approval of a plan or amendment within 120 days after receiving the plan. *See id.* § 1, sec. 26.179(g), 1995 Tex. Gen. Laws 4863, 4864. Landowners may appeal a TNRCC denial of a plan or amendment in a court of competent jurisdiction. *See id.* On appeal, the TNRCC has the burden of proof. *See id.* For zones of 1,000 acres or more, a plan or amendment remains effective during an appeal of a TNRCC denial. *See id.*; *see also FM Props.*, 22 S.W.3d at 871.

Once a zone is designated, a municipality may not enforce in the zone any ordinances, land use ordinances, rules, or requirements "including, but not limited to, the abatement of nuisances, pollution control and abatement programs or regulations, water quality ordinances, subdivision requirements, other than technical review and inspections for utilities connecting to a municipally owned water or wastewater system, or any environmental regulations" that are inconsistent with or impair the ability to implement and operate the land use plan and water quality plan as filed. *See* Act of May 24, 1995, 74th Leg., R.S., ch. 975, § 1, sec. 26.179(i), 1995 Tex. Gen. Laws 4863, 4865. In addition, a city may not collect fees or assessments or exercise powers of eminent domain within a zone until it annexes the zone. *See id.* A city may not annex a zone until ninety percent of the

zone's facilities and infrastructure described in the water quality plan are completed, or until twenty years from the designation date has passed, whichever occurs first. *See id.*

In *FM Properties*, the Texas Supreme Court considered whether this statute impermissibly delegated legislative authority to private parties. It did so applying a two-step test first articulated by the court in *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, 952 S.W.2d 454, 472 (Tex. 1997) ("*Boll Weevil*"). *See FM Props.*, 22 S.W.3d at 873-875. As a threshold matter, the court would consider whether there had been a delegation of legislative authority to private parties. *See FM Props.*, at 874. If it determined that there had been, the court would then consider whether the delegation was constitutional by analyzing the delegation under the following eight factors:

> 1.   Are the private delegate's actions subject to meaningful review by a state agency or other branch of state government?
>
> 2.   Are the persons affected by the private delegate's actions adequately represented in the decisionmaking process?
>
> 3.   Is the private delegate's power limited to making rules, or does the delegate also apply the law to particular individuals?
>
> 4.   Does the private delegate have a pecuniary or other personal interest that may conflict with its public function?
>
> 5.   Is the private delegate empowered to define criminal acts or impose criminal sanctions?
>
> 6.   Is the delegation narrow in duration, extent, and subject matter?
>
> 7.   Does the private delegate possess special qualifications or training for the task delegated to it?
>
> 8.   Has the Legislature provided sufficient standards to guide the private delegate in its work?

*Id.* (citing *Proctor v. Andrews*, 972 S.W.2d 729, 735 (Tex. 1998); *Boll Weevil*, 952 S.W.2d at 472). The court explained that "[i]f a particular statute delegates legislative authority to a private entity and these eight factors weigh against the delegation, then the statute is unconstitutional." *FM Props.* at 875 (citing *Boll Weevil*, 952 S.W.2d at 475). No factor weighs more heavily than others, but the importance of each factor will necessarily differ in each case. *See id.*

Addressing the threshold question, the court concluded that section 26.179 delegated legislative power to private parties because it gave certain private landowners the power to regulate

water quality on their property and in waterways located on their property and allowed them to choose between two general objectives in formulating their water quality plans. *See id.*; *see also id.* at 876 (concluding that water quality regulation is a legislative power). While landowners owning 500 to 1,000 acres had to secure preapproval of their water quality zones from the TNRCC, landowners owning 1,000 acres or more could designate a zone and implement a water quality plan without preapproval from the TNRCC. *See id.* at 875. Only after these plans were in effect did TNRCC have review power. *See id.* And if the TNRCC denied a plan and the landowner appealed that decision in court, the plan remained in effect throughout the appeal process. *See id.* Further, for zones of all sizes, the TNRCC had the burden of proof on the denial of a plan or amendment to a plan. *See id.*

The court also noted that section 26.179 delegated to certain landowners the power to exempt themselves from the enforcement of municipal regulations, including not only those regulating water quality, but also land use ordinances, nuisance abatement, platting and subdivision requirements, pollution control and abatement programs or regulations, and "any environmental regulations." *Id.* (quoting the 1995 version of section 26.179(i) of the Water Code).

Having determined that the statute delegated legislative authority to private landowners, the court then applied the eight *Boll Weevil* factors and concluded that the factors as a whole weighed against the constitutionality of the delegation. *See id.* at 880-88. In the court's view, the first, second, fourth, and sixth factors weighed against the constitutionality of the delegation. With respect to the first factor – the extent of governmental review over the private delegates' actions – the court concluded that section 26.179 vested the TNRCC with only limited review over landowners' water quality protection plans and gave it no power to review their decisions about which municipal regulations would be enforceable on their property. *See id.* at 880-84. With respect to the second factor – the extent to which individuals affected by the private delegation are represented in the decision-making process – the court concluded that section 26.179 did not afford adequate representation to those affected by the landowners' actions. TNRCC was prohibited from requiring a public hearing on a water quality plan, and no party had the right to appeal TNRCC's approval of a plan. *See id.* at 884. And affected members of the public had no right to obtain any kind of review of landowners' decisions regarding which municipal regulations would apply to the landowners' property. *See id.* at 885.

In considering the fourth factor – whether the private delegate has a pecuniary interest that conflicts with the public function – the court concluded that the landowners' "pecuniary interest in maximizing profit and minimizing costs may conflict with" the public function of regulating water quality. *Id.* at 885. Finally, the court concluded that the sixth factor – the duration, extent, and subject matter of the delegation – also weighed heavily against the delegation. The delegation, although limited to water quality and land use, was broad with respect to the powers delegated. Moreover, the delegation was not limited in duration because a water quality plan was a covenant that ran with the land. A city could not annex a zone, and displace its plan, until twenty years after the zone's designation or after completion of ninety percent of the zone's facilities and infrastructure. *See id.* at 886.

We conclude that the 1999 amendments to section 26.179 do not change the statute enough to alter the court's assessment. The Seventy-sixth Texas Legislature enacted two bills amending section 26.179. The first bill, House Bill 2932, amended subsection (c) of the statute to clarify that the statute applies "only to those areas within the extraterritorial jurisdiction, outside the *full-purpose* corporate limits" of an affected municipality. Act of May 10, 1999, 76th Leg., R.S., ch. 225, § 1, 1999 Tex. Gen. Laws 718 (added language in italics). A bill analysis explains that some cities annex land in two types of ways: "Under a full purpose annexation, a city annexes the property for all purposes and to provide all city services . . .; under limited purpose annexation, a city may control certain development, but is under no obligation to provide basic city services." HOUSE COMM. ON LAND & RESOURCE MANAGEMENT, BILL ANALYSIS, Tex. H.B. 2932, 76th Leg., R.S. (1999). The purpose of this bill was to clarify that section 26.179 applies "to areas outside the full purpose corporate limits of a municipality." *Id.* This amendment merely clarifies that a water quality protection zone may be created in an area that a city has annexed for only limited purposes. It neither adds to nor subtracts from the power of the private landowners or any governmental entity vis-à-vis a zone and thus does not affect the delegation of legislative authority to private parties.

The second bill, Senate Bill 1165, amended section 26.179 in five ways. First, it changed the population requirement for municipalities whose ETJs are affected by the statute from 5,000 to 10,000. *See* Act of May 28, 1999, 76th Leg., R.S., ch. 1543, § 1, sec. 26.179(c), 1999 Tex. Gen. Laws 5310. Second, it changed the statute's description of its purpose from:

> to provide the flexibility necessary to facilitate the development of the land within the zone, but which also is intended to result in the protection of water quality within the zone.[2]

to:

> to provide for the consistent protection of water quality in the zone without imposing undue regulatory uncertainty on owners of land in the zone.

*Id.* § 1, sec. 26.179(d). Third, the bill provided that a water quality protection zone could be described by "other adequate legal description" in addition to metes and bounds. *See id.* § 1, sec. 26.179(e), (g). Fourth, the bill provided for the amendment of a water quality protection zone, for the addition of or exclusion of land from a zone by amendment, and for termination of a zone. *See id.* § 1, sec. 26.179(g). Fifth and finally, the bill provided that "[n]ew development under a plan may not proceed until the plan or amendment to the plan, as appropriate, has been approved by the [TNRCC]." *Id.* § 1, sec. 26.179(h), 1999 Tex. Gen. Laws 5310, 5311.

The first three Senate Bill 1165 amendments are not particularly substantive; they do not change the nature of the statute's delegation of legislative authority to private parties. Nor does the fourth, which merely provides a mechanism for amending or terminating a zone. Although this

---

[2] Act of May 24, 1995, 74th Leg., R.S., ch. 975, § 1, sec. 26.179(d), 1995 Tex. Gen. Laws 4863, 4864.

Senate Bill 1165 amendment does authorize the TNRCC to terminate a zone and impose conditions on the termination, the TNRCC may do so only upon the application of all owners of land in the zone or the parties authorized to amend the zone designation. As with the 1995 version of the statute, TNRCC still lacks independent authority to terminate a zone "for noncompliance with section 26.179 or other water quality protection laws and regulations." *FM Props.*, 22 S.W.3d at 883 (holding that TNRCC's lack of authority to terminate a zone weighed against the delegation). The TNRCC's authority to review a plan or an amendment to a plan has not been changed.

The final Senate Bill 1165 amendment, which adds the proviso that "[n]ew development under a plan may not proceed until the plan or amendment to the plan, as appropriate, has been approved by the [TNRCC]," is the most substantive of the changes and is somewhat relevant to the court's analysis in *FM Properties*. *See* Act of May 28, 1999, 76th Leg., R.S., ch. 1543, § 1, sec. 26.179(h), 1999 Tex. Gen. Laws 5310, 5311. In considering the extent to which the landowners' actions were subject to review by the TNRCC or any other governmental entity under the first *Boll Weevil* factor, the court expressly noted that under the 1995 version of the statute "landowners owning 1,000 acres or more can begin to develop land and implement water quality plans even before TNRCC begins its review." *FM Props.*, 22 S.W.3d at 881. This amendment limits the authority of landowners of over 1,000 acres to develop their property during the 120 days given to TNRCC to review a plan, putting them on an equal footing with landowners of 500 to 1,000 acres.

However, we do not believe that this change overcomes the court's objections. In its extensive analysis of the first factor, the court was most concerned about the substance of TNRCC's authority, which it found did not provide for meaningful review of the landowners' authority. The court was no less concerned with the TNRCC's authority over zones created by landowners owning 500 to 1,000 acres than it was with the TNRCC's authority over zones created by landowners with holdings over 1,000 acres. Moreover, this amendment does not add to the substance of TNRCC's authority to review or monitor water quality protection zones or plans.

In sum, we believe that the Texas Supreme Court's analysis of section 26.179 in *FM Properties* would not change in light of the 1999 amendments. These amendments would not change the court's conclusion that section 26.179 delegates legislative authority to private parties or affect the ultimate outcome of its review of the *Boll Weevil* factors. Because section 26.179 as amended in 1999 is not significantly different from the statute considered by the Texas Supreme Court in *FM Properties*, we conclude consistent with that opinion that the current version of the statute is unconstitutional.

**S U M M A R Y**

In *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868 (Tex. 2000), the Texas Supreme Court held that section 26.179 of the Texas Water Code, as it was enacted in 1995, violated article III, section 1 of the Texas Constitution because it impermissibly delegated legislative authority to private landowners. The 1999 amendments to section 26.179 do not affect the Texas Supreme Court's conclusion that the statute is unconstitutional.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee